## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | Case No. 3:18-cr-172 (2) |
| | : | |
| v. | : | Judge Thomas M. Rose |
| | : | |
| A. PHILIP THOMAS CHRISTIAN | : | |
| DAUGHERTY, aka "Phil," aka "Backwood | : | |
| Philley," aka "Fetty," aka "Fetty Phil," aka | : | |
| "Phil Hardaway," | : | |
| | | |
| Defendant. | | |

_____

### FINDINGS OF FACT AND CONCLUSIONS OF LAW
_____

Defendant, A. Philip Thomas Christian Daugherty ("Defendant" or "Daugherty"), was indicted by a federal grand jury on charges of carjacking, the use of a firearm during and in relation to a crime of violence, aiding and abetting the same, and conspiracy to commit carjacking, pursuant to 18 U.S.C. § 2119(1), 18 U.S.C. § 924(c)(1)(A)(iii), 18 U.S.C. § 2, and 18 U.S.C. § 371, respectively. (Doc. 27.) Defendant pleaded guilty to the carjacking and conspiracy offenses. (Doc. 116.) Defendant requested a bench trial as to the count related to Defendant's use of a firearm during a crime of violence (Count 3). (*Id*.) This Court conducted a bench trial on September 30, 2019; November 18, 2019; and June 17, 2020. (Docs. 128, 135, and 159.)

At the close of the bench trial, the Court requested the parties to file proposed findings of fact and conclusions of law. Both parties have done so, and the matter is now ripe for adjudication. (Doc. 160; Doc. 161.) Pursuant to Federal Rule of Criminal Procedure 23(c), the Court makes the following findings of fact and conclusions of law and finds Defendant GUILTY on Count Three of the Indictment.

1

I. **FINDINGS OF FACT**

1.  During the afternoon of July 5, 2018, Defendant, Zhaire Simone Chardae Evans ("Evans"), Zy'lique Anaise Murphy ("Murphy"), and Carlos Raymond Alvarez ("Alvarez" and, collectively, "the defendants") were at the residence of Alvarez's grandmother, located on Ark Avenue in Dayton, Ohio (the "Alvarez Residence"). (Doc. 128 at PAGEID # 497-98, 527-28; Doc. 159 at PAGEID # 816.)

2.  At the Alvarez Residence, Defendant and Alvarez passed a firearm between themselves. (Doc. 128 at PAGEID # 519-20, 528-29.) The firearm belonged to Defendant at the time of the carjacking, and he later sold it to Alvarez. (*Id.* at PAGEID # 532, 540, 555-567; Doc. 159 at PAGEID # 811, 816.)

3.  Defendant left the Alvarez Residence to take a shower at a nearby home. (Doc. 159 at PAGEID # 806-07.) Defendant placed the firearm in an abandoned vehicle, walked to the home, showered, and returned to the Alvarez Residence to find Alvarez holding the firearm that Defendant had stored in the car. (*Id*. at PAGEID # 807-08.)

4.  Upon Defendant's return to the Alvarez Residence, the defendants were looking to secure a ride from Dayton to Columbus, Ohio and ultimately decided to take someone else's car to secure transport. (Doc. 128 at PAGEID # 498-500, 529-31.)

5.  The defendants decided to use the Plenty-of-Fish dating app as a means for securing transportation. (Doc. 128 at PAGEID # 498-500, 529-31; Doc. 159 at PAGEID # 808.) The basic outline of their plan was as follows: Murphy and Evans were to go to an abandoned house located at 3836 Ark Avenue in Dayton (the "Abandoned House")—a few blocks down the street from the Alvarez Residence—and use the

2

Plenty-of-Fish dating app to entice a person to arrive at the Abandoned House. Upon that person's arrival, Murphy and Evans were to notify Defendant and Alvarez, who would then arrive and take car keys from the unsuspecting victim. (Doc. 128 at PAGEID # 500-02, 530-31; Doc. 135 at PAGEID # 611; Doc. 159 at PAGEID # 808-09.)

6. Having decided on their plan, Murphy and Evans left the Alvarez Residence and arrived at the Abandoned House. (Doc. 128 at PAGEID # 500-01, 531.)

7. Using the Plenty-of-Fish dating app, Murphy or Evans matched with Niles Isaac ("Mr. Isaac") and arranged to meet at the Abandoned House. (Doc. 128 at PAGEID # 443-44, 501-03.)

8. Mr. Isaac arrived at the Abandoned House shortly after 12:00 a.m. on July 6, 2018, approached the house, and spoke with Murphy and Evans for about ten minutes. (Doc. 128 at PAGEID # 445-46, 449, 503-04.)

9. Soon after Mr. Isaac's arrival, Murphy notified Defendant and Alvarez of Mr. Issac's arrival. (Doc. 128 at PAGEID # 532.) Defendant and Alvarez then walked from the Alvarez Residence to the Abandoned House. (*Id.*; Doc. 159 at PAGEID # 809.)

10. Upon their arrival at the Abandoned House, Defendant and Alvarez approached Mr. Isaac and shouted at him. (Doc. 128 at PAGEID # 449-50, 504-06, 532-33.) Alvarez pulled out the firearm and discharged it. (*Id.* at PAGEID # 504-06, 532-33.) Defendant and Alvarez then physically attacked Mr. Isaac in an attempt to obtain his car keys. (*Id.* at PAGEID # 452-53, 504-06, 532-33; Doc. 159 at PAGEID # 810.)

11. The defendants were successful in obtaining Mr. Isaac's car keys, and all of the defendants entered his car and drove to Columbus. (Doc. 128 at PAGEID # 452, 504-07, 533; Doc. 159 at PAGEID # 810.)

## II.    CONCLUSIONS OF LAW

The statute at 18 U.S.C. § 924(c)(1)(A) reads, in pertinent part, that "any person, who during and in relation to any crime of violence … uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall in addition to the punishment provided for such a crime of violence" will be subjected to higher sentences for the use of the firearm. The Sixth Circuit has noted that the statute has "two basic elements (the crime-of-violence element and the firearm element)." *Manners v. United States*, 947 F.3d 377, 382 (6th Cir. 2020). The federal aiding and abetting statute at 18 U.S.C. § 2(a) provides that a person who is found to have aided and abetted a commission of a crime is punishable as a principal. 18 U.S.C. § 2(a) ("[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal").

As an initial matter, the Court finds that the crime-of-violence element of 18 U.S.C. § 924(c)(1)(A) has been satisfied beyond a reasonable doubt. Defendant pleaded guilty to carjacking under 18 U.S.C. § 2119. (Doc. 116.) Carjacking is a crime of violence. *United States v. Jackson*, 918 F.3d 467, 486 (6th Cir. 2019).

The government offers two theories for finding that the firearm element has been satisfied and, therefore, for finding Defendant guilty of Count Three: (1) Defendant personally used the firearm, or (2) Defendant aided and abetted Alvarez's use of the firearm during the carjacking. (*See* Doc. 160.)

### A.    Government's Proposed Theory Number 1:  Defendant Used the Firearm

The government has failed to prove beyond a reasonable doubt that Defendant was the

4

person who discharged the firearm during the carjacking. The only identification linking Defendant to pulling the trigger is that of the victim, Mr. Isaac. (Doc. 128 at PAGEID # 14.) No other witness or evidence supports the victim's accusation. In fact, the testimony of Evans and Alvarez establish the exact opposite: that Alvarez was the man behind the firearm during the attack. (Doc. 128 at PAGEID # 77; Doc. 128 at PAGEID # 96.) Reasonable doubt exists that Defendant was the person who used or carried or possessed the firearm during the carjacking, so this theory must fail.

**B. Government's Proposed Theory Number 2: Defendant Was an Aider or Abettor**

Notwithstanding the above, Defendant may be found guilty of Count Three as an aider and abettor if the requirements of *Rosemond v. United States*, 572 U.S. 65, 134 S. Ct. 1240, 188 L. Ed. 2d 248 (2014) are satisfied. To show that an accused aided or abetted an offense under 18 U.S.C. § 924(c), the government must prove "that the defendant actively participated in the underlying … violent crime with underscore advance knowledge that a confederate would use or carry a gun during the crime's commission." *Rosemond*, 572 U.S. at 67 (emphasis added). Therefore, the government must prove: (1) an affirmative act in furtherance of the underlying crime, and (2) intent in the form of advance knowledge that a firearm will be involved. *See id.* at 71-78 ("[a]n active participant in [a crime of violence] has the intent needed to aid and abet a §924(c) violation when he knows that one of his confederates will carry a gun"). To establish the required intent, the government does not have to prove that the defendant knew in advance that a firearm would actually be fired, but rather must show that the defendant entered and agreed to the enterprise with full knowledge that the scope of the act would include the use of a firearm. *United States v. Nicholson*, 716 F. App'x 400, 411 (6th Cir. 2017); *United States v. Henry*, 797 F.3d 371, 374 (6th Cir. 2015) ("[a]n accomplice thus must have advance knowledge that a firearm will be used in connection with the underlying crime because he must choose to align himself with the illegal scheme in its entirety—

including its use of a firearm") (alterations adopted) (internal quotation marks omitted).

Generally, if a defendant is unaware of a gun's involvement until it appears at the crime scene, then that is not enough to establish the advanced knowledge requirement. *Rosemond*, 572 U.S. at 78. But, if a defendant continues to participate in the crime after a gun has been displayed or fired by a confederate, then "the [fact finder] can permissibly infer from his failure to object or withdraw that he had such knowledge." *Id.* at 78 n.9; *see also United States v. Henry*, 722 F. App'x 496, 499 (6th Cir. 2018) (finding that the defendant's refusal to withdraw and lack of reaction after the confederate revealed a firearm during the crime of violence was evidence of advance knowledge).

In the instant case, Defendant took an affirmative act by participating in the carjacking. He was an active participant in it. Therefore, the first requirement under the *Rosemond* test has been satisfied. Next, Defendant had the required advanced knowledge about the intended use of a firearm in the commission of the carjacking. First, Defendant was seen with the firearm in question in the hours leading up to the carjacking, passing it around with Alvarez. Second, despite Defendant's attempt to hide the firearm in an abandoned car, Defendant subsequently saw Alvarez with the firearm at the Alvarez Residence. At that time, the defendants—including Defendant and Alverez—were formulating the plan to carjack someone, and Defendant and Alverez subsequently went to the scene of the carjacking together (and participated in the carjacking together). Finally, Defendant continued with his participation in the carjacking even after the firearm was discharged,[1] which *Rosemond* allows a fact finder to use as inferential evidence of knowledge. *See*

---

[1] This is supported by testimony from both Mr. Issac (the victim) and Evans (a confederate). Mr. Issac testified: "So after the gun was discharged, basically I still did not move. And then they [Defendant and Alvarez] started to approach me even more. Basically, physically they started to approach me, so I had to get up. And we started wrestling on the porch. And somehow I got down to the street, 'cause it was two on one. It got down to the street – I mean the driveway. And then that's where the shorter guy pinned me down. And then the taller guy was just kind of like, 'Just strike him.' You know, he was looking, trying to get the keys. And then I believe the shorter guy was still on top of me punching my head. And then the taller one actually took the keys at that point …." (Doc. 128 at

6

*Rosemond*, 572 U.S. at 78 n.9. This includes that Defendant physically attacked Mr. Issac, entered Mr. Issac's car, and drove off with Alvarez, Evans, and Murphy. Therefore, when considering all the facts and circumstances of this case, the evidence supports beyond a reasonable doubt that Defendant knew that one of his confederates (Alvarez) would carry a gun during the carjacking. The second *Rosemond* requirement is satisfied. *Rosemond*, 572 U.S. at 77 ("[a]n active participant in [a crime of violence] has the intent needed to aid and abet a §924(c) violation when he knows that one of his confederates will carry a gun").

Thus, the Court finds that the government has proven, beyond a reasonable doubt, "that the defendant actively participated in the … violent crime [of carjacking] with advance knowledge that a confederate would use or carry a gun during the crime's commission." *Rosemond*, 572 U.S. at 67; *see also United States v. Hinton*, 730 F. App'x 719, 723-24 (11th Cir. 2018) (affirming § 924(c) conviction involving carjacking where, "[w]hile no direct evidence exists that [defendant] knew [a confederate] had a gun, the government presented sufficient circumstantial evidence from which the [fact finder] reasonably could have inferred he knew about the weapon"); *United States v. Crowe*, No. CR. 18-50010-02 & 03-JLV, 2020 U.S. Dist. LEXIS 108749, at *25, 2020 WL 3412580 (D.S.D. June 20, 2020) (fact finder could infer intent where there was evidence that a confederate pointed a gun at the victim while the defendant choked him out during the carjacking, yet defendant continued to participate in the offense).

## III.   CONCLUSION

For the foregoing reasons, this Court finds the Defendant GUILTY of Count Three of the Indictment—the use of a firearm in relation to a crime of violence, pursuant to 18 U.S.C. §

---

PAGEID # 452.) Evans testified: "Next thing you know, I hear a gun shot. I walk back to the house. I'm in the street. I see [Defendant] and [Alvarez] beating up [Mr. Issac]. They got his keys, got in the car, and we went to Columbus." (Doc. 128 at PAGEID # 505.)

924(c)(1)(A) and 18 U.S.C. § 2.  The government has proven the elements of the crime charged beyond a reasonable doubt.  The Court will issue a separate notation order setting a date for sentencing.[2]

      **DONE** and **ORDERED** in Dayton, Ohio, this Friday, December 4, 2020.

s/Thomas M. Rose

_____

THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE

---

[2] The Court acknowledges the valuable contribution and assistance of judicial extern Ashley Oravetz in drafting this order.